Case today is number 2012-1682, Mid-Continent Nail Corporation v. United States. Before you begin, the Commerce Department's first decision here is reprinted in the appendix. It's cut off pages, which makes it impossible to read. This begins at page JA-207. I think you should be more careful about the way the appendix is put together. And please submit to us a clean copy of this so that we have it. Yes, Your Honor, I want to apologize. I realized that in preparation for oral argument that it is cut off. I'm very sorry. And we'll certainly provide substitute pages that are legible. I apologize, Your Honor. May it please the Court, the judgment below should be reversed because the trial courts contradicted this Court's decision in Walgreens, which recognized Commerce's discretion to determine precisely what product is at issue and should be subject to the final scope of language of the abuser. Complete discretion? Complete discretion? Well, not discretion that can't be abused, but it's cabined by the discretion is in the statute, it's within the scope regulation, which provides... So what are the limits on Commerce's discretion? Oh, for arbitrary and capricious or beyond? Yes, that's just words, but give me an example here. Well, in terms of the Commerce's actual authority to determine the product at issue, I think that's inherent. I think the Court recognized this in Walgreens. It could be certainly the trial court could have taken issue with a mixed-media task. Would it be an abuse of discretion, for example, if the hammer were sold with five pounds of nails to say that that's mixed-media and the nails in that package aren't subject to the anti-dumping order? That would be on the merits of the determination. The reason why the United States is appealing is because... But what's the answer? I'm trying to get at the question of when there would be an abuse of discretion. Suppose Commerce said, well, hammer, five pounds of nails, that's okay, it's mixed-media, it's not subject to the anti-dumping order. I would argue, Your Honor, in that situation, there could be an argument that the substantial evidence doesn't support the task or doesn't support Commerce's determination. It's not a question of substantial evidence. It's a question of whether that's a reasonable interpretation of the anti-dumping order that says nails. And Commerce says, well, nails means only nails sold alone, and the fact that there's a hammer together with these nails takes it out of the anti-dumping order. That could be the case as well. The question here, the reason why... What would the answer be in that situation? Would that be an abuse of discretion? It could be an abuse of discretion if the products were clearly at odds, if there were no rational reasoning in Commerce's application of its test. As this Court recognized in Long Green, Commerce has not had a bright line for mixed-media sets. It has had an ad hoc determination... Well, we can all agree that it doesn't have a bright line test. Mostly, before now, it didn't seem to have much of a test at all. Exactly, but the Court didn't take issue. And in this case, another reason... Well, so, I mean, they reviewed how things went down, Commerce's determination that the order was quite clear in that case, recognizing that Commerce had some determination, and they affirmed. I'm not sure what kind of leeway you think, therefore, Walgreen gives you in a case such as this. Because... You can come up with any factors, or we get to review the factors. I mean, you've come up with a test now that includes a few factors. Do we get to review that under the standard of abuse of discretion, whether we think these factors are reasonable? Yes, Your Honor. And then we get to review whether the application, even if the factors are okay, whether the application of those factors... Those could certainly be reviewed as well. Well, tell me how you can review the factor of value when you don't quantify what value is. You say, we're going to look at the value. Okay, does that mean that you're not telling us if the value is under 90%, we're going to allow it, or whatever? We have no information on how you apply what the so-called value standard is, right? Your Honor, that would be... There's an analysis of Commerce's application of those factors, and the court could either review that as reasonable or unreasonable, and maybe set aside Commerce's determination on that basis. We have to be clear, the trial court here said that Commerce's... And on page J5 of the joint appendix, it called into question Commerce's authority to even decide the issue. And I respectfully submit... No, that's not the issue. Commerce has the authority to decide the issue, but the question we're asking you is, you seem to be claiming unlimited discretion to interpret the anti-dumping order in this respect, and that's problematic. I mean, these orders are supposed to give notice to people as to what's covered without having to go for a scope rule. And you seem to be saying, oh, well, we don't have to write the order in a way that anybody can understand it, because the solution is to come in for a scope rule. And that's troublesome. We're saying precisely the opposite. First of all, the purling language of Commerce's scope regulation, which this Court has interpreted numerous times, says expressly it must necessarily be in general terms, because Commerce cannot predict every possible manner in which subject merchandise may be packaged. But there's nothing in this order at all about mixed media. Unlike Walgreens, where there was something not in the order itself, but in the company of documents, there's not a word in this order about how mixed media should be treated. Correct? But that's why Commerce reserves... Is that correct? That is correct, which is why Commerce necessarily has to have... Let me ask you this. In this case, the final order in the Walgreens, which is articulated, talks about packaging individuals. If the similar language had been in this order with respect to inclusion or packaging with other tools or whatever, would this case come out different? Not allow Libya from Commerce to decide that, but not necessarily, because that's... We start and begin with the order. Really? Not necessarily? If the order itself explicitly allowed for circumstances where meals are a component and they're coupled with other tools? Well, yes. Under that hypothetical, yes. That would be governed... That would be... Depends on what the scope of the order said. The issue is Commerce's determination, before it even takes the step of applying the product at issue, applying it towards the language of the order, it needs to determine what the product is. And as processors, Commerce determined that the etouffee was a unique product. And this court... In that regard, and excuse me for interrupting, but in that regard, what product is it that you're looking at? Are you looking at the toolkit that's imported, or are you looking at the component, the nail component of that toolkit, which was the subject of the earlier order? When you make this sort of threshold mixed-media analysis before you get into a scope interpretation, what is it that you're looking at? That is the fundamental dispute here. Commerce applied in the final scope ruling and applied the toolkit to the language of the order and determined it was outside the scope as a mixed-media set. The trial court took issue and said, Commerce, you didn't even decide what the product... You didn't explain why you applied it against the toolkit rather than the nails within the toolkit. And I want to be clear here. The nails within the toolkit are subject to the scope of the order. There's no question about that. The question is, is this product sold as a nail or nails, or is this product sold as a toolkit? And is it a unique product? And Commerce here, although we don't think that Commerce was required doing a fair reading of the court's decision of Walgreen, I realize we have two of the panelists from Walgreen before, and I'm not presuming to say what your honors meant, but they're reading the language of Walgreen where the court went through various ad hoc determinations. A compass and pencil kit, for instance. Commerce made an ad hoc determination that even though the pencil was subject to the scope of the order, the pencil and compass set was not subject to the order. And Commerce has various determinations. Of course this court can review... But the problem is, in making those determinations, and in this case before the Court of International Trade remanded, it seems to be virtually standardless. There doesn't seem to be any articulated criteria for determining what's a mixed media set that should be within the scope of the order and which isn't. And even with the four factors that you've now adopted, the fourth factor sort of says any other factor that you consider to be relevant. I agree with you. But Commerce is here trying to provide more notice to the important community about how it will address these mixed media issues. Commerce is here what? Before this court? Pardon me? You said Commerce is here trying to provide more guidance and whatever. What do you mean by here? Here before us? In this proceeding. In other words, I want to be in response to Judge Lynn's question. We are not defending the original final scope inquiry here. What we're asking for is for the remand determination, which Commerce tried to do better. And we were told that we have no authority to do that. So you're basically saying that you should have at least some discretion to set forth some sort of a test. You may not have succeeded in setting forth the test here. But if you haven't succeeded, you want at least the opportunity to do it again and do it right. Exactly, Your Honor. But again, that gets to Judge Dyke's question. Against what standard would any sort of test be measured? Well, we would say that the real thing would be for this court to review the application of the test. And if Commerce reaches a crazy result and says that it's just this product. You only get reversed if you're crazy? An abuse of discretion. In other words, we're not disputing the reviewability. The problem is what's the standard? Because there are all kinds of things that have been thrown around. There's a transformation. There's a question of is it a unique product? Is there some cooperation between the mixed media components? But what is it that you're looking at in assessing whether, in this case, the nails that are clearly subject to the order should somehow not be considered subject to the order? The unique facts and circumstances of every case, which this court has recognized in King's Supply and numerous other cases. There's no test at all. Not only is there no test for judicial review, it doesn't provide any guidance to people trying to read the order. And there's a whole line of cases from the D.C. Circuit, which we've cited approvingly, the GE and the Chrysler case. Are you familiar with that line of cases? Well, you know, why don't those apply here? Which say that, you know, where there's a penalty or something like a penalty or a monetary imposition, that you have to provide notice at the outset so that people can read the order and understand what it means. Why aren't you bound by that obligation? Well, the issue here is there's not a challenge to the scope, the original scope of the nails order, which was in the first court. It's not a challenge to the scope of the order, but it's a challenge... To the language. The question here is whether you have to, in the original order, spell it out so that people can understand it. And what we're saying to you, and you've admitted that there's nothing in the order itself that helps you understand how to deal with a mixed media set, and the various cases that you had before the order in this case didn't provide any meaningful guidance as to how to figure it out. What you're doing is you're leaving importers, you're telling them, well, the order is completely unclear, and we'll tell you when we get around to it in the scope rule and what the order means. That doesn't seem to be consistent with those cases. Well, the alternative would be to have every single nail that's ever imported, including hanging on a picture frame. No, that's not the alternative. But that's the effect of the trial court's judgment below, which is why we find that untenable. I agree with you that the trial court's reasoning here may be problematic. But I think once one gets past that, the question still exists, have you provided notice in the order as to how these things should be treated, and what's your obligation to provide notice in the order so that somebody reading it can decide how to organize its business? Well, again, consistent with the scope regulation, the language of the order is written broadly. In a perfect world, it might provide more guidance, which is one of the reasons why we are seeking, where Commerce tried to improve on remand, provide more notice for the importing community about the factors that Commerce will look in a mixed-media situation. The factors may be good, the factors may be bad. The reason why we're here is because the court didn't even opine on that. It said that Commerce had no right to do that, that by not preserving its ability to do this mixed-media analysis, which has been done in numerous cases, which the court discussed in Walgreen, Commerce essentially forfeited its right, and therefore it leads to an absurd result where every single nail from China that comes through the border is subject to the anti-dumping order, and that's not a tenable result. The reason why we appealed was simply to have Commerce's authority recognized, maybe to do a better job, but that at least has the authority to try. Okay, thank you. I'm sorry, but not at this time. We'll give you two minutes for rebuttal. Thank you. Ms. Crossman, is that how you pronounce it? That's correct, Your Honor. Thank you. Good morning. I'd like to pick up briefly on the issue of the basis for the Commerce Department's mixed-media analysis. As you know, this case is a perfect example of why you actually need a mixed-media analysis. Things like nails and other types of products, pencils, pads of paper, come in, or they're used in a lot of other different products. And when they're used, typically... That absolutely makes sense. The problem is there's no notice about the standards to be applied that would enable somebody to read this anti-dumping order or the Commerce precedent before that and figure out what's covered and what's not covered. That's the problem. Well, I think, first of all, you have the basic statutory notice, which says, first of all, the scope of any order can only apply to the sales of the subject merchandise in the United States. Okay? So the fundamental question that commerce faces when they look at a mixed-media product, like they did here, is what was sold to the United States, is this a sale of a nail to the United States, or is this a sale of a different product, a unique product that incorporates a nail as a component? And how was someone to know what the difference was when this order was issued? When the order was issued, the order is on nails. That's true. And you're right. It says nothing about any other product besides a nail. But the fact that the order doesn't say something about mixed-media, that does not give the authority. You can't read the absence of anything about toolkits as automatically giving the Commerce Department authority to actually subject a toolkit to the order. And here, in particular, you look at the facts of this case. If you accept mid-continence theory and the quartz theory, particularly looking at their suggesting that any nail that's not substantially transformed or physically altered in some way. You just said, let's look at the facts of this case. The facts of this case don't say any nail that happens to be in a toolbox. Right. Let's look at the facts of this case, and you could apply it to furniture. You have a toolkit manufacturer. Toolkit manufacturer makes tools, doesn't make nails. That toolkit manufacturer, Target orders toolkits from that manufacturer. Toolkit manufacturer makes the toolkit, dresses it up with a lot of accessories, goes out on the market and buys a fastener kit. That fastener kit has a small amount of little one-inch brass nails in it. Okay. What is the standard for determining whether those nails are subject to the order or not? At the time this order was issued, you're sitting there and you're trying to figure out, are these nails that are part of this kit subject to the order or not? How do you determine that? What's the standard? Because you ask yourself, is the product that was sold and imported to the United States, was that product nails or was it a different product that just happened to have nails in it? What product are you talking about? This gets to the question I asked earlier. When you say you have to determine what the product is that's sold in the United States, well, the product is both a toolkit and a nail within a toolkit. The nails are part of the toolkit. It's not a different product. It has no different function, no different shape, no different use. It's the same nail. I would look at it from Target's perspective. When Target buys a toolkit from a toolkit manufacturer, it's not a nail producer. Are they supposed to know where the toolkit manufacturer sourced every component that's in that toolkit? They're not buying nails. There is no sale. Walgreens dealt with gift bags, and the paper was 6% to 11% of the value was the tissue paper, and that came out the way it did. Right, and nobody has suggested that any of the factors in this test are dispositive. The difference you had, and when you have, if you look at all of the mixed media cases, I'll grant you, what's the difference between you and Walgreens? Okay, I'll tell you. The difference is because what Walgreens had was a situation where you had an order on tissue paper. They brought in a product. What was imported was actually, it was a plastic retail bag, a hang bag for a display counter that happened to have tissue paper in it and bags and a bow. What Commerce found, and I don't disagree with that decision, that simply because you put them all in the same retail hang bag doesn't mean you've created a unique product. But if you take a pad and you manufacture pad folios and you happen to sell them with a pad in it, you're producing a pad folio. If you're a toolkit manufacturer and you happen to put a lot of accessories in your toolkit and you buy, you buy in China, not Target, you buy a sale of nails, you buy nails in China and you put them in that toolkit, you're selling a toolkit to the United States, you're not selling nails. If you put, if you build cars... Let's assume the nails comprise 45% of the value of the toolkit. You had, however, five items in it and nails were 45%. You'd say, it's still a toolkit and nails could come... I would think it would be unlikely that you'd have a situation like that where you would end up with a unique product. I can't think of one. I think it'd be unlikely where you'd have nails that would be that high a value of it. Most of the time when nails come in other products, they're a very small portion of the value. Think of electronics or furniture kits... So is the answer to my hypothetical guess? Excuse me? Is my hypothetical guess that then we treat them as nails because they're 45% of the value? As I said, I can't think of what a product is. I mean, I can use Mr. Gordon's example in his brief where he talks about 50 pounds of nails and a hammer. Now, I would be shocked. I don't think commerce could reasonably say 50 pounds of nails with a hammer is a unique product and the nails are out. So why shouldn't the commerce, for example, have a test that says if it's 5% or less of the value, it's not going to be counted. It's not going to be within the scope of the error. Why can't there be some guidance here? Why is it possible to have some guidance? I'm not saying they can never come up with a percentage threshold, but I will tell you I spent three years in the Department of Commerce as Deputy Chief Counsel, 13 years. And every time we set a hard number in these cases, it's hard to draw those bright lines. As the courts in Walgreen acknowledge themselves, the facts of the case, does that mean that if you set the threshold at 5% and it's 5.1%, do you have to find it's in scope? You're dramatically expanding the impact of an asset dumping duty order. If you think about it. We're dramatically expanding the idea that people ought to be able to read these orders and have some sense in advance of what they mean. And most of the time they do. And the reality is, though, for some orders, that clarity comes over time with scope ruling. Well, why can't you answer the question about whether in a toolkit where we've established it's undisputed that the value of the nails within that toolkit is 45% of the value of the toolkit, in or out? I don't know. I know you don't like that line.  If nails were 45% of the toolkit, I would seriously question whether that was what we commonly think of as a toolkit. I'm serious. A toolkit has a lot of other tools, and the essential character of a toolkit is defined by the tools, not things like fasteners and nails. If the tissue paper only represented 6% to 11% of the gift bag, it was a gift bag. It wasn't tissue paper. You were importing a gift bag, not tissue paper. And their commerce did that. But there are other factors besides value. Again, they look at function. In other words, they say a toolkit has functions well beyond a nail. It is a whole organization. I don't understand the application of that criteria at all. If we're looking at function, it would seem to me we ought to be looking at the function of the nails. Are the nails included in the toolkit serving the function that nails normally do, including those nails in the original order? I didn't understand why you have to look at the function. And your answer to function of toolkit was that every piece of this has a separate interesting function. I don't understand why that helps you and not them. Because if you are focusing simply on the function of the nails, what the test is focusing on is the imported article. They're looking at the toolkit, and they're saying, does the toolkit itself have some independent function, some independent identity? And even the way they're classified, they're classified as… Does a gift bag have an independent identity from the tissue paper within that? A gift bag might, but there is no independent identity for a retail hang bag that has a lot of different articles in it. That was the product they tried to argue was unique, was the retail package with different articles in it. Are you saying then that the threshold question is whether you determine that the product being imported has, for example, a new name, character, and use from the product that is subject to the order? Is that the test? You know, we have from the cases, is it a unique product? And you've argued, is it a different product? And what are we looking for here as the threshold? Well, it's interesting that you raise it, because petitioners themselves, if you look back, they talk a lot about what happened at the original investigation with the Stanley nail gun kit, which I'm sure you've read in their brief, and they quote what they said in response to that. But they don't quote everything that they said about that. And I would like you to look at what they said with respect to the nail gun, specifically referring back to things like the pencil scope rulings. And if you remember one of those, for example, one of them was actually a Target Hello Kitty dress-up kit. It's a little bag, has all kinds of things in it, and a pencil. Mid-continent, when they distinguished those cases, they said that Stanley's nail gun was fundamentally different from products like that dress-up tote, in which the subject merchandise is subsumed within a set of goods whose essential character is defined by something other than the subject merchandise. That's mid-continent's words, not mine. And I'd say that's an excellent description of Target's toolkit. It's like a dress-up kit for homeowners. So are you suggesting that perhaps that should be the test? Whether something is subsumed within... I think something is subsumed within a set of goods. That's not substantially transformed. Really, talking about substantial transformation in these cases doesn't make any sense. Every single mixed-media case, the whole reason that you need a special method is because they're the only types of products in which the components aren't substantially transformed. All of these cases involve things where there's no substantial transformation. But I do think the idea that it's subsumed in something... I think we're out of time. Thank you. Thank you. Mr. Gordon? Good morning, Your Honors. May it please the Court. I'm Adam Gordon from Wiley-Ryan, appearing today on behalf of the Mid-Continent Nail Corporation. The lower court's ruling should be affirmed. We submit because the order at issue is unambiguous, and it unambiguously covers the nails at issue in Target's toolkits. All the parties admit that the nails are covered by the scope of the order. I think you have a hard time suggesting that it's unambiguous when there were rulings before this in cases in our court that suggested that in reading an anti-dumping order, mixed media is treated by special rules. And why wouldn't someone reading this order say, well, I've got to figure out in a mixed media situation whether it's covered or not? It doesn't seem to me to be in context as clear as you say it is. In fact, my concern, and I think my colleagues' concern, is almost the opposite, that it's not clear at all. Well, Your Honor, within the parameters of... Our initial argument would be to the court that, in fact, it is clear because the nails exhibit all the physical characteristics that are described by the scope of that case. There is no exclusion, and they do not fall within any of the defined exclusions. But the product that's being imported, it's not just nails. It's nails as one component in a larger assembly of things that don't necessarily interact with each other, but nonetheless they're in a toolkit. Yes, toolkits are an interesting item because unlike a good that's being imported... In fact, let me take a step back. Along the spectrum of these mixed media cases, if you'll call them that, you'll have something like the crawfish case at one end where Commerce actually examined what happened to the crawfish meat itself, finding that it was substantially transformed by virtue of the whole process, the cooking process, and what it did to the meat and all that. At the other end of the spectrum, you have cases like the Walgreens case where, to refine a little bit of what we heard before, the issue there was a gift bag set. Not just a gift bag, but a gift bag set that included... And I was involved in that case as well. It included gift bags, tissue paper, ribbons, cards, bows, things like that. They were all coordinated, however, and yet still Commerce found... So they were intended to work together, but Commerce found, rightly, that the tissue paper was really just packaged with other articles and remained dutiable. I would submit that this case on toolkits is actually further along the spectrum away from crawfish and even beyond the Walgreens case in making it an easier decision by virtue of the fact that a toolkit is nothing more than an assembly of disparate items with no preordained or coordinated purpose or use ahead of time. In fact, they can be used for home repair. They can be used for building things. Yeah, but isn't your... One of the distinctions at least one could if they wanted to draw between this and Walgreens was that in Walgreens, the order did not specify that we're talking about tissue paper used in bags and other contents, right? So the order was a lot more clear in terms of what was in and what was out, right? Yes, Your Honor. The order was more clear on this point. However, this brings us to the discussion had in the original investigation of the nails case during the period for scope comments when an importer came in and asked for, made the argument that its tool gun kits, a pneumatic tool gun with a small, a very small amount of nails that comes in, maybe 1,000, but 1,000 finished nails is actually a very small box, that those should not be covered. And we responded not just specifically with respect to that kit, but in a more general statement saying that it is our position and it always has been that the nails that exhibit scope characteristics are covered even when they are packaged with non-subject goods. And that's directly because of the experience with the Walgreens sort of situation and tissue paper and being aware of the other cases that are cited like the Pat Filio case and all that, which I don't agree with the outcome of those cases necessarily. So... I'm sorry, I lost my train of thought. Why, at the time of this order, I mean, didn't people know that in order to determine whether something was within the scope of an order or not that you had to determine whether it was the product identified in the order or some different product that's packaged with something else? I mean, the rules as to which category was which were very unclear, but it was at least known that mixed-media situations played by somewhat different rules and that there was a need to identify the product. Isn't that the case? That would be the case, which is why we... Thank you for saying that because that brought me back to my train of thought. We specifically requested and suggested to the Commerce Department that it include language clarifying this exact situation if it felt it was necessary, and Commerce did not include any language to that effect. Now, whether you want to say that's because the importer withdrew its request or not, the fact remains that this conversation occurred on the record in the original investigation. Commerce and the community writ large was on notice of the domestic industry's position with respect to nails packaged with other non-subject articles because we were concerned about it as an opportunity. If we reject the sort of global notion that Congress has no authority to do anything here, a nail is a nail is a nail, what test would you propose? What level of discretion would you propose? And what standards would you propose? Well, they start with the fundamentals that Commerce may interpret the scope of an order but has to respect and start with the primacy of the language of the order itself. And it cannot interpret the scope in a way that unduly improperly expands it, nor, as I would say... But the order here is silent. I mean, there are other orders that say, combined with other items, it's still covered with this order. And this one is silent. So let's assume that may lead you to just in the midpoint. Right. So what do you do then? What's the standard that applies and what are the factors in that standard? I think it will always come back to a substantial evidence standard. I think there's a certain role for Commerce's case-by-case determination on this, but it definitely needs more structure. What's the standard? What is the test you're looking for? Are you looking for... Are the goods subsumed? Is there a new character of the imported product? Is it unique? Is it a different product? What question is Commerce to answer in making this determination? I can't say that as I stand here today I'm prepared to articulate a test because we didn't go to the Court of International Trade seeking that kind of an expression. Our point is that whatever the test that could be used, these nails are covered merchandise by virtue of the facts of the case. Well, let me try to... So Congress came up on remand with its own test and it describes three factors that are applicable here and then the fourth, which is catch-all. Do you have any comment you'd like to make with respect to the validity, the relevance of any of those factors? Absolutely. We think the Court below rightly found that that test was unlawful because it invites scrutiny of the new product and does not start and reflect the primacy of the order. So if I understand what you're saying is that unless they include some language in the order saying mixed-media products are to be determined under the following test that they're stuck with the breadth of the order. Is that essentially what you're saying? I think that unless there is language in an order that limits its application consistent with well-founded principles of law, an order is to be construed broadly to effectuate its intended remedial intent. In other words, they would have had to say nails other than those sold in combination with any other tools or any other items in the universe? Well, you would need to have an exclusion and you would need to have language that actually carves out goods that would not be covered just as commerce always has scope exclusions. And in fact, what commerce in effect attempted to do in its scope determination was create a new exclusion. So suppose they've said in the order where nails are packaged together with other goods, commerce will make a case-by-case determination as to whether this is included within the scope of the order. And that's it. That's all they say. We had invited commerce to speak to this issue. No, no. What was the answer? I mean, does that do the trick? Well, it would certainly put the importing community on notice as to what would happen with the order. But I would also submit that that's not necessary. Would it be sufficient? To satisfy... To satisfy this case and to allow commerce to issue the scope ruling that it did if they had that predicate language in the order? Well, I would assume that they have the ability to conduct these inquiries. We've never challenged their ability. No, but what's the answer? I mean, I'm trying to get at what you want in the order and I'm saying, okay, here's the hypothetical. The order says nails packaged with other things may or may not be subject to the order and commerce will determine on a case-by-case basis when they are subject to the order, when they're not. Well, Your Honor, we think the order is fine as it's written. So, I mean, that's... You're not answering my question. I'm trying to find out what would satisfy you in terms of creating authority for commerce to make a determination. What do they have to put in the order to satisfy? Well, I don't think they have to put anything in the order to satisfy us on this point. They don't? Well, we had asked them to put language in the order addressing affirmatively these situations saying that, you know, it is our position so that nails remain subject, you know, whether or not packaged with non-subject articles.  transformation, these kinds of things and there are a myriad of... They say they want to maintain flexibility to determine whether things, nails packaged with other things are subject to the order or not. And in order to give it the flexibility, it's going to put the language that I suggested in the order. And is that sufficient to give them the authority to do what they did here? To give them the authority to conduct such an inquiry? I think they have that authority. That wouldn't add to the authority? To say these nails are exempt. Would commerce's ruling here be a lawful ruling if the order had included language saying mixed media sets are to be determined on a case-by-case basis? No. No, their ruling would not be lawful on that basis, even if they put that language in. Well, I think, I don't know, I'm a little puzzled by your answer. On one hand, I thought you would recoil at that because you would argue that it seriously undermines the order. I mean, it gives the red light. In other words, just package nails with some other thing and you're likely to avoid the scope of disorder. I assume if that language were included, whoever was on the side of the anti-dumping proceeding would find that objectionable. But you don't seem to have that kind of problem. Well, I mean, obviously we would not want that language for exactly the reason that you described. But, you know, that language wouldn't... The question I have is would that language make their decision lawful? And my answer is no. Would I want that language in there in the first place? Of course not, absolutely not. But that's because you agree then with your friend on the other side that they clearly have the authority to make these determinations and to do the analysis. The only problem is what kind of standards they're using and what criteria they're using to make the evaluation. Am I right? We agree that the Commerce Department has and needs to have discretion to interpret its orders because situations do arise when an order may not be entirely clear. This is not one of those situations. The order here we submit, I know there may be a difference of opinion, we submit is quite clear as to what is... What would they have to put in the order? You say this order is clear. And you concede that they could write a different order which would give them the authority to determine whether mixed media sets were within the order or not within the order, right? Yes? Yes. Okay, so what language would they have to include in the order to accomplish that? I would have to reflect on that before I give an answer to that one. I'm a little confused because I thought your position was that they have the authority to make a mixed media determination even without language in the order. Yes, I think the Walgreen case speaks to that, saying that Commerce has the discretion and needs to be able to identify the product that is the subject of the scope inquiry. So let's assume that the order is silent about mixed media, which is indeed the case here, and let's assume that Commerce does have some discretion. Let's then go back to where we started. What's the standard against which that discretion is to be measured? It is not unfettered discretion. It is not unfettered discretion. So what is it that determines whether they've exceeded their discretionary authority or not? I think that will be in part driven by the language of the scope of the order itself. But here we have an order that's silent. Can they exclude some mixed media sets with the kind of order that they have here, which is silent? I would say they can, depending on what the set is. I'm sorry, I didn't hear you. They can? I would say perhaps they can, because as I said before, we view the scope inquiries as along a spectrum. You have something at one end, say the crawfish type case, and you have something at the other end here, which is an easy decision saying the nails continue to be covered at the other end. And there may be things in between. So what's the test for determining what's in between? In the cases and in their decisions, there are a number of... I don't think they've articulated a test successfully to date. I question whether doing it in the context of a scope inquiry like this is appropriate given the far-ranging nature of it. Maybe it's something that's more appropriate to put up for notice and comment as an addition to the regulations. That would be more appropriate for the entire bar and the community to opine on. But the test involves... I would only be speculating as to what the test is, what it should be. But looking at things like whether the goods interact, whether they are intended to be used altogether for one purpose at the same time, these are... How does that cut? Which way does that factor cut? Because I was a little confused by the record here. Would your view be if they interact with other tools or whatever, that makes them more susceptible to being a mixed media, whereas if they don't interact and they're just used independently for their intended purpose, they are more likely to just be treated as nails? That factor, we also... I was also... I puzzled over that factor quite a bit because you can characterize anything as having a generally similar use, which, according to their argument, would mean you treat it... you break out the components separately, which I did not understand. Because I see it as, in this case, for example... Think about a furniture kit, an IKEA furniture kit. While they don't usually come with nails, let's say there's a component, a fastener in there that is subject. Well, those are all... It's specifically designed for a singular purpose to be used and assembled all at one time. I don't think any... I would question whether those fasteners would be considered in scope, as opposed to a situation here where you have a number of unrelated articles, most all of which do not and cannot be used together, which is with no... So that should cut in your favor?  OK. What about... We talked with your friend on the other side about a percentage and limiting percentages in terms of the value component of this. Do you have any... Yeah. The value element of their test is improper. It's a relative assessment, looking at the relative value or cost as compared to the value or cost of the entire article. That's going to be differing... Well, first and foremost, there is no de minimis exclusion in the order of this case. So we would strongly oppose any attempt to introduce a de minimis exclusion where we have never agreed to that because what's de minimis in one context could be a lot of nails. Do orders typically or sometimes at least have a de minimis exception included in the original order? Is that something that appears frequently? Not to my knowledge. I mean, there may be some cases, but I'm not able to recall them offhand. I don't recall that I would ever put one in. Broadening that question, what do these orders say about mixed media? We have an example on Walgreens where they said that it's still covered even if it's packaged with other items. Do these anti-dumping orders generally address the question of mixed media? In my experience, they do not. In fact, I can give you an example. Following the case on nails from China, which we brought, in 2011, we brought a case against nails imported from the United Arab Emirates. And with an eye toward this experience, when we drafted the petition and submitted it, we specifically included language on this saying, nails exhibiting the physical characteristics of the scope remain covered by this order, whether imported alone or packaged with other goods. Commerce took that out when they published the scope language. So, we have tried to address this, to avoid the kinds of problems that arise. And I've seen situations where commerce has actually declined to address it. As they did in the original investigation of the China case, when we asked them to clarify this, and nothing happened. We asked them generally, not just... Well, I'd say having the order not speak to this issue doesn't mean that it's ambiguous. I think it reflects the fact that commerce felt it was adequately addressed by the scope language as it stands. That's something we've already threw out. Okay. Thank you, Mr. Gordon. Ms. McCarthy, you have two minutes there. Is Mr. Gordon right that these orders generally don't say anything about mixed media? I think he generally is right. And the question is, well, first of all... Commerce, I feel like I'm going into buzz thought to draw your Honor's attention to the defective pages of the joint appendix. But at pages 212 through 216, commerce, in the final scope ruling, did a K-2 analysis against the toolkit and determined that it was outside the scope of the order. Mr. Gordon wants to take the language of the order as it is. The product that commerce will look at is what the product is being imported, which is a toolkit. Applying its regulatory factors, it determined it was a K-2 analysis. The continent challenged that below, and Judge DeCarlo said, no, commerce, you shouldn't have applied it. You just assumed it was a toolkit. Really, you should have applied it towards the nails, which is the whole issue we have here. And to the extent that the petitioner has asked for a clarification to allow mixed media and commerce rejects that, then they're stuck with the language as it is. And then they run the risk that commerce is going to apply a K-2 analysis against the toolkit and determine that it's outside the scope of the order. Your view is the K-2 analysis should not be applied to the toolkit? In order to determine whether something is a mixed media set that's not subject to the order, the K-2 analysis is irrelevant to that? Well, in the final rule, in the final scope ruling, commerce applied it towards the order. On remand, because the trial court told commerce that it shouldn't have... So in the original order, the K-2 analysis was used to determine whether it was a mixed media set not subject to the order? No, the mixed media issue, commerce simply determined... Applied the K-2 factors to the toolkit, not to the nails, to the toolkit. It's just that was the order, that was the product. So that's step three. There's an initial determination that you want to use based on your relatively new criteria, valuable or not, and that's the threshold determination. I want to stress we're trying to do better here. Wait a minute, I just want to clarify... This is an immediate... Let me ask. I want to understand the scheme of how things work. The K-2 criteria only come in later on. Exactly. What we are talking about is the question, our commerce wants to be able to come in and first say, are we mixed media, in order to know whether or not the K-2 is going to be applied to the toolkits or not, right? K-1 and then K-2, right. So in other words, that's the merits of the determination. Is this product within or without the scope of the order? What we're fighting about here is what is the product? And commerce's authority to determine what is the product. And this court may like the test that commerce articulated or might dislike the test that commerce articulated, but commerce is a good faith attempt to provide more notice to the community about what we will consider in determining on a case-by-case basis as to what the product is. But if Big Comet wants to go with the K-2 analysis for the toolbox, then it's outside the scope of the order. So if the government agrees that it might be also a way of achieving what appears to be your goal now, is to provide more clarity, wouldn't Judge Dyke's suggestion that that clarity, commerce ought to think more about that clarity being included in the initial order to the extent that products are foreseeable? Well, yeah. But I guess the nature of these, I'll just say this, these orders are in effect for several years, sometimes decades. And it's very difficult to ask an agency to foresee all manner in which these products may be. Well, but that's not the point. The point is whether you should say something in the order that, one, puts people on notice that mixed-media sets may or may not be subject to the order and gives some criteria so that people can determine whether it would be a product subject to the order or a product outside the order in the mixed-media situation. I mean, that's not asking you to specify every possible product. It's asking you to put some sort of guidelines in the order so that people know what's potentially coming. That may be a better practice here, but the question isn't silenced. Is commerce forfeit its right to do that? And we would say no. And there's no precedent holding that. And that leads to a certain result. The answer that Judge Dyke might be suggesting is that we had a lot of discussion about what is the standard against which the discretion should be measured. And is it the solution to establish some sort of a standard in the order itself? That could be done on a case-by-case basis, recognizing the nature of the particular product which is subject to the original anti-dumping order. And then that would provide a standard against which commerce's discretion could be measured. Could put in the order, for example, this is fine if it's included in a toolkit or if it's included with other merchandise of XYZ, etc. At least there would be a standard, because there is no standard now. Well, there is a body of commerce's scope inquiries, and also these factors are meant to be... But you agree, don't you, that before this case, there was no ascertainable standard as to what the criteria were for determining whether something packaged with other goods should be subject to the order or not? We agree, which is why commerce is not challenging the initial remand order, sending it back for articulation of a clear and consistent task. As I said, commerce is trying to do better, trying to provide notice. But the reason why we're appealing is that the Child Judge ruled that commerce lacked the authority even to do that and that it erred in not applying its regulatory factors to the nails in the toolbox. And that's just an arbitrary expansion of the order. There's no suggestion that the ITC considered the injury being caused by toolkits in its investigation. It just creates chaos and confusion, and we're asking just for recognition of commerce's authority to try and do better. Thank you very much. Thank you both counsel, all counsel, and the cases submitted. And that concludes our session for today. All rise. The Honorable Court is adjourned for the day today.